In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1037

DARRELL K. HAZE,

*Plaintiff-Appellant,*

*v.*

MARK KUBICEK,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 13-cv-01344-NJ — **Nancy Joseph**, *Magistrate Judge.*

ARGUED MAY 22, 2017 — DECIDED JANUARY 30, 2018

Before FLAUM, EASTERBROOK, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Darrell Haze was ticketed for disorderly conduct after he tussled with Milwaukee Police Officer Mark Kubicek outside the Bradley Center on the night of a Bucks game. He contested the ticket and won. He then sued Kubicek for damages alleging that the officer unlawfully stopped him, falsely arrested him, used excessive force, and targeted him based on his race.

Officer Kubicek moved for summary judgment on all claims, and Haze sought partial summary judgment on the false-arrest claim. A magistrate judge, presiding by consent, denied the motions based on pervasive factual disputes. After a two-day trial, a jury exonerated Kubicek on all but the unlawful-stop claim. On that claim the jury found that the stop was unlawful (because it was not supported by adequate suspicion) but was not the proximate cause of any compensable injury.

Haze filed two posttrial motions, one for judgment notwithstanding the verdict and the other for a new trial. He argued that the jury's split verdict—finding that the stop was unlawful but the officer did not use excessive force—was fatally inconsistent. He also asked the judge for nominal damages and a declaratory judgment as remedies for the unlawful stop. The judge denied most of these requests, but she did award $1 in nominal damages for the unlawful stop.

On appeal Haze contends that he was entitled to summary judgment on his claim for false arrest. That argument is procedurally foreclosed. The false-arrest claim was tried, the jury rejected it, and neither of Haze's posttrial motions challenged this aspect of the jury's verdict. That blocks our review. *Ortiz v. Jordan*, 562 U.S. 180, 188–89 (2011). Haze also reprises his argument that the jury's verdict was inconsistent. It was not. The lawfulness of the stop and the lawfulness of the officer's use of force were distinct inquiries subject to different legal tests; an unlawful stop does not make an officer's later use of force per se unreasonable. Finally, Haze argues that the judge wrongly rejected his request for a declaratory judgment. The judge reasonably

declined to issue that extra remedy; the jury's verdict is vindication enough on the unlawful-stop claim.

## I. Background

On the evening of March 22, 2012, Officer Mark Kubicek and two partners, Officers Paul Helminiak and Pernell Reynolds, were on bicycle patrol in downtown Milwaukee near the Bradley Center, where the Bucks were playing. The police department had recently received complaints that scalpers were illegally selling tickets outside the Bradley Center, so the officers were on the lookout for suspicious activity. A Milwaukee ordinance prohibits scalping—reselling tickets above face value—within 500 feet of the venue two hours before the event. MILWAUKEE MUNICIPAL CODE § 105-56. But selling tickets at or below face value is legal.

About 30 minutes before the game started, Officer Kubicek and his partners noticed Haze standing outside the Bradley Center holding a sign that said "We need tickets." Curiously, a man standing right next to Haze held a sign that said "Now selling tickets." The officers sensed something amiss.

At trial Haze and Kubicek gave sharply conflicting accounts of what happened next. In the officer's telling, when Haze saw the police nearby, he looked shifty and tried to hide his sign, so the officers approached and asked to speak with the two men. The second man—the one selling tickets—was cooperative. He told the officers that Haze had been "fussing and fighting" with a woman shortly before they arrived. Haze denied this. When the officers inquired about Haze's sign and asked why he hadn't bought the other

man's tickets, Haze said evasively that the tickets were no good. He then turned and quickly walked away, loudly exclaiming that he didn't have to put up with racial profiling.

Officer Kubicek ordered Haze to stop. Haze ignored the order and continued to walk away, so Kubicek dismounted his bicycle, caught up with Haze, and used a pressure hold on his right arm to stop him. When Haze began to belligerently resist, Kubicek and Helminiak placed him in handcuffs to control the scene as they continued to investigate. As Haze was being handcuffed, he yelled to Officer Reynolds: "Hey black boy; hey black boy; you need to help me out with this profiling bullshit."

At this point Lorene Lee approached the scene and identified herself as the person Haze had been fighting with earlier that evening. Officer Kubicek noticed that Haze reeked of alcohol, appeared intoxicated, and seemed unsteady, so the officer leaned him up against a low wall for balance. Haze then winked at Officer Reynolds and threw himself onto the ground, yelling that Kubicek had hurt him and that he would "collect thousands off you fools."

At Haze's request the officers called an ambulance and summoned a supervisor to handle the abuse allegation. Haze told the supervisor that one of the officers had threatened to shoot him. When pressed for details, however, he said he couldn't recall which one made the threat. (He has since abandoned this allegation.) Haze was taken by ambulance to a nearby hospital and quickly released.

Haze's account was quite different. He denied attempting to hide his sign, making comments about racial profiling,

walking away from the officers, or resisting in any way. He claimed that when Officer Kubicek approached and asked for an ID, he reached into his fanny pack to comply, but Kubicek suddenly grabbed his arm, placed him in a painful pressure hold, and slammed him to the ground. He said the officer then handcuffed him and shoved him against a wall. He denied that he threw himself on the ground; rather, he said he was dizzy and in pain, lost his balance, and fell. He also denied winking at Officer Reynolds or making any remarks about a lawsuit.

Haze was ticketed for disorderly conduct. He disputed the ticket, and a municipal judge held a trial and dismissed it. Haze then sued Officer Kubicek for damages under 42 U.S.C. § 1983. He alleged that the officer violated his rights under the Fourth and Fourteenth Amendments by stopping him without reasonable suspicion, falsely arresting him, and using excessive force. He also alleged that Kubicek targeted him because of his race in violation of the Equal Protection Clause.[1]

Officer Kubicek moved for summary judgment on all claims, both on the merits and based on qualified immunity. Haze opposed the motion and filed a cross-motion for summary judgment on the false-arrest claim. The magistrate judge denied both motions, concluding that material facts on all claims were sharply in dispute.

The case proceeded to trial, and a jury returned a defense verdict on three of the four counts. The jury cleared Officer Kubicek on the claims for false arrest, excessive force, and

---

[1] Haze also brought a due-process claim for malicious prosecution, but it was dismissed and is not at issue here.

intentional discrimination. On the remaining claim for an unlawful stop, the jurors found that Kubicek lacked reasonable suspicion to conduct a temporary detention but the unlawful stop was not a proximate cause of any compensable injury.

Haze filed two posttrial motions, one for judgment notwithstanding the verdict under Rule 50(b) of the Federal Rules of Civil Procedure and the other for a new trial under Rule 59. Both motions asserted that the jury's findings on the lawfulness of the stop and the officer's use of force were inconsistent. More specifically, Haze argued that because the jury found that the initial detention was unlawful, *any* use of force during the encounter was necessarily unreasonable. He also asked the judge to award nominal damages and a declaratory judgment on the unlawful-stop claim.

The judge resolved the motions in a single order. She granted relief in part, awarding nominal damages of $1 for the unlawful stop. But she denied relief in all other respects, disagreeing that the verdict was inconsistent and declining to enter a declaration of rights on the unlawfulness of the stop. Haze appealed.

## II. Discussion

### A. False-Arrest Claim; Denial of Summary Judgment

Haze's first line of attack is a challenge to the judge's denial of his motion for summary judgment on the false-arrest claim. That argument is procedurally barred. It is basic procedural law that a denial of summary judgment is an interlocutory ruling; once a claim has been tried, the losing litigant must file a Rule 50(b) motion to preserve an appellate challenge to the jury's verdict. *Ortiz*, 562 U.S. at 188–89;

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006). Haze's Rule 50(b) motion did not include a challenge to the jury's verdict on the false-arrest claim. That omission forecloses review. *Ortiz*, 562 U.S. at 189 ("Absent [a Rule 50(b)] motion, … an appellate court is 'powerless' to review the sufficiency of the evidence after trial.").

**B. Inconsistent Verdict**

Haze next argues that the jury returned an inconsistent verdict on the lawfulness of the stop and the officer's use of force. He raised this claim in both posttrial motions. The redundancy was unnecessary; a Rule 59 motion for a new trial is the correct procedural vehicle. *See Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005). Our review is for abuse of discretion. *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011). There was no inconsistency in the verdict, so the judge was right to deny relief.

Haze reasons that because a frisk pursuant to an unlawful stop is unlawful, *see Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009), it follows that *any* use of force pursuant to an unlawful stop—even de minimis force—is *necessarily* excessive and thus unreasonable under the Fourth Amendment. He cites no authority for this per se rule, and indeed there is none.

To the contrary, it is well established that the lawfulness of a temporary detention and the lawfulness of an officer's use of force are separate questions subject to different legal tests. Both actions are subject to the Fourth Amendment's reasonableness requirement, but the legal inquiries are conceptually distinct. *See County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547–48 (2017) (explaining that excessive-

force claims are conceptually distinct from other Fourth Amendment claims arising from the same occurrence and should be analyzed separately); *see also Sebright v. City of Rockford*, 585 F. App'x 905, 907 (7th Cir. 2014) ("[T]he lawfulness of an arrest is irrelevant to an excessive force analysis."); *Carlson v. Bukovic*, 621 F.3d 610, 622 n.19 (7th Cir. 2010) (explaining that a "seizure without probable cause is conceptually different from a seizure that employs excessive force; both are unreasonable, but for different reasons"); *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010); *Snell v. City of York*, 564 F.3d 659, 672 (3d Cir. 2009) (rejecting "efforts to bootstrap excessive force claims and probable cause challenges").

An officer's use of force is evaluated under the totality of the circumstances, as required by *Graham v. Connor*, 490 U.S. 386 (1989). Here the jury found that although Officer Kubicek lacked adequate suspicion to justify a temporary detention,[2] whatever degree of force he later used as the encounter evolved was not excessive under all the circumstances. Those findings are not fatally inconsistent.

## C. Declaratory Judgment

Finally, Haze insists that the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitles him to a declaration of rights that

---

[2] For clarity's sake we note that Officer Kubicek needed no suspicion at all to justify his decision to approach Haze and ask a few questions. *United States v. Adamson*, 441 F.3d 513, 519–20 (7th Cir. 2006) ("It is well settled that police may approach an individual in a public place and seek the individual's cooperation in answering a few questions."). A police-citizen encounter like this, however, sometimes "ripen[s] into an investigative detention," which "is permitted when the police have reasonable suspicion, supported by articulable facts, that criminal activity is afoot." *Id.* at 520.

the stop was unlawful in order to give effect to the jury's verdict. But the Act says only that the court "*may* declare the rights and other legal relations of any interested party, … not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (internal quotation marks omitted). This statutory text "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

The judge denied Haze's request for a declaratory judgment, reasoning that the jury's verdict was a "declaration" of sorts and an award of nominal damages for the unlawful stop would suffice to vindicate Haze's rights. That was an eminently reasonable exercise of discretion. A formal declaration of rights would add nothing. The jury's verdict and the nominal-damages award speak for themselves.

AFFIRMED.